**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　　*Plaintiff-Appellee,*

v.

XAVIER SERNA,
　　　　　　　　*Defendant-Appellant.*

No. 04-10597

D.C. No.
CR-04-00188-EJG

OPINION

Appeal from the United States District Court
for the Eastern District of California
Edward J. Garcia, District Judge, Presiding

Argued and Submitted
October 18, 2005—San Francisco, California

Filed January 23, 2006

Before: Alex Kozinski and Ferdinand F. Fernandez,
Circuit Judges, and Terry J. Hatter, Jr.,* District Judge.

Opinion by Judge Kozinski

---

*The Honorable Terry J. Hatter, Jr., Senior United States District Judge
for the Central District of California, sitting by designation.

## COUNSEL

Quin Denvir, Federal Defender, Sacramento, California, for the defendant-appellant.

McGregor W. Scott, United States Attorney; Jason Hitt, Assistant United States Attorney, Sacramento, California, for the plaintiff-appellee.

## OPINION

KOZINSKI, Circuit Judge:

We consider whether possession of an assault weapon in violation of California Penal Code section 12280(b) is a "crime of violence" under the federal Sentencing Guidelines.

**Facts**

Serna pleaded guilty to being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). It wasn't the first time Serna had illegally possessed a firearm—he had previously pleaded guilty to violating California Penal Code § 12280(b), which outlaws possession of "assault weapons."[1] The district court concluded that Serna's state-court conviction was a "crime of violence." *See* U.S.S.G. § 2K2.1(a)(4)(A).[2] This finding had the effect of increasing the sentencing range for Serna's federal conviction from 27-33 months to 46-57 months. The district court gave Serna a 46 month sentence, and Serna appeals.

**Analysis**

[1] Section 4B1.2(a) of the Sentencing Guidelines defines "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another, or . . . *involves conduct that presents a serious potential risk of physical injury to another*." (emphasis added). California punishes felony possession of an assault weapon by imprisonment for a term exceeding one year. *See* Cal. Penal Code § 12280(b); *In re Jorge M.*, 4 P.3d 297, 305-06 (Cal. 2000). But merely possessing a weapon doesn't involve the use, attempted use or threatened use of physical force, so Serna's prior conviction qualifies as a crime of violence only if simple possession of an assault weapon "presents a serious potential risk of physical injury to another."

---

[1]California's definition of "assault weapons" includes some semiautomatic rifles, pistols and shotguns, and any shotgun with a revolving cylinder. *See* Cal. Penal Code § 12276.1.

[2]All references to the Sentencing Guidelines are to the November 5, 2003, version.

**[2]** In determining whether a prior conviction supports a sentence enhancement under federal law, we normally look to both the statutory definition of the crime and to the actual conduct charged. *United States* v. *Young*, 990 F.2d 469, 472 (9th Cir. 1993). However, the record here does not contain the charging papers for Serna's prior conviction. We are therefore left only with the fact that Serna was convicted of violating section 12280(b).

Serna's prior conviction was for possession of an object. Almost any object—a car, a golf club, even a pair of nail clippers—can be used to cause physical injury. *See, e.g.*, *State* v. *McKnight*, 19 P.3d 64, 65 (Idaho Ct. App. 2000) (defendant beat victim with a golf club until he was bleeding profusely and then ran over him five times with a car); *State* v. *Whitaker*, 225 S.E.2d 129, 131 (N.C. Ct. App. 1976) (jury could find nail clippers to be a deadly weapon). Were an object's potential for causing physical injury enough to render illegal possession thereof a crime of violence, almost all possessory crimes would be crimes of violence; the Guidelines thus focus on whether the crime presents a "*serious* potential risk" of physical injury.

Our caselaw and the Sentencing Guidelines instruct that being a felon in possession of a firearm is not a crime of violence. *See United States* v. *Sahakian*, 965 F.2d 740, 742 (9th Cir. 1992); U.S.S.G. § 4B1.2 app. n.1. Since illegal possession of an ordinary firearm isn't a crime of violence, we know that possessing an object designed to be lethal does not alone pose a "serious potential risk" of physical injury. Although most uses of a firearm are violent and destructive, not all violence and destruction are illegitimate: Hunting, target shooting and self-defense, though inherently violent and destructive, are legitimate and legal. When considering the risk of physical injury then, we look only to the illegitimate and unlawful uses and exclude legitimate uses of the item, even though they could result in physical injury. So long as the item in question has substantial legitimate uses, its mere

possession cannot, without more, constitute a crime of violence.

On the other hand, if we know that an object has no lawful uses, we can presume that someone who possesses it intentionally does so for the purpose of using it illicitly. And, if the universe of uses for such an object is largely confined to illegitimate violence, we can infer that the object will be used to intimidate or inflict physical injury during the course of an unlawful transaction. We have thus held that illegal possession of such a weapon—like a silencer or a sawed-off shotgun—is a crime of violence. *See United States* v. *Delaney*, 427 F.3d 1224, 1226 (9th Cir. 2005); *United States* v. *Hayes*, 7 F.3d 144, 145 (9th Cir. 1993); *United States* v. *Huffhines*, 967 F.2d 314, 320-21 (9th Cir. 1992). What distinguishes silencers or sawed-off shotguns from other dangerous firearms isn't the amount of injury they're capable of inflicting—there are many weapons that can cause a lot more injury than a silencer. What makes silencers and sawed-off shotguns different from ordinary weapons is that they have few, if any, legitimate uses. Unlike an ordinary firearm, neither is likely to serve any sporting or self-defense purpose. Thus, we have held that they "are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantia risk of improper physical force." *Delaney*, 427 F.3d at 1226 (quoting *Hayes*, 7 F.3d at 145) (internal quotation marks omitted). We must determine, therefore, whether an assault weapon is more like an ordinary firearm, or more like a silencer or sawed-off shotgun.

Congress requires registration of any silencer, sawed-off shotgun or similar firearm. *See* 26 U.S.C. §§ 5841, 5845(a).[3]

---

[3]For purposes of the registration requirement, Congress defines as "firearms" many weapons that are not technically firearms, such as silencers, bombs, grenades and mines. "In short, the term [firearm] as used in the Act bears little if any correspondence to that in common usage, much as though the word 'animal' were defined in some supposititious National Zoo Act to exclude all mammals, reptiles and birds except lions and tigers, but to include freight trains, teddy bears, feather-boas and halltrees." *United States* v. *Anderson*, 885 F.2d 1248, 1251 (5th Cir. 1989) (en banc).

Failure to register a listed firearm is a crime punishable by up to ten years is prison. *See* 26 U.S.C. §§ 5861(d), 5871; *Staples* v. *United States*, 511 U.S. 600, 602-03 (1994). The registration requirement reflects Congress's determination that certain weapons are almost certain to be used for unlawful purposes: "[T]he primary reason that unregistered possession of these particular weapons is a crime is the virtual inevitability that such possession will result in violence." *United States* v. *Jennings*, 195 F.3d 795, 799 (5th Cir. 1999). As the Seventh Circuit put it, "most firearms do not have to be registered—only those that Congress found to be inherently dangerous. If the weapon is not so labeled, mere possession by a felon is not a crime of violence." *United States* v. *Brazeau*, 237 F.3d 842, 845 (7th Cir. 2001). Congress has never imposed a blanket registration requirement on semiautomatic weapons, suggesting that they have lawful uses and are less likely to lead to unlawful violence than sawed-off shotguns and silencers.

**[3]** When Serna was convicted of possession of an assault weapon in 2002, possession of some semiautomatic weapons was a federal crime—but no longer. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, §§ 110102, 110105, 108 Stat. 1796, 1996-98, 2000 (banning assault weapons for ten years). Thus, non-felons can now freely possess assault weapons under federal law. Even before the federal ban was allowed to lapse, it was riddled with exceptions: Congress exempted any firearm lawfully possessed under federal law before the passage of the act, *see* 18 U.S.C. § 922(v)(2) (expired 2004), and over 650 specific firearms, *see id.* § 922(v)(3) (expired 2004). Thus, a large number of semiautomatic weapons remained legally in circulation, even during the so-called ban.

**[4]** In the end, the temporary federal ban on assault weapons is largely a wash. The most plausible inference to be drawn from the evolution of federal law as to assault weapons is that Congress allowed the ban to lapse, having found it unnecessary. Because current federal policy places assault

weapons on the same footing as other non-registrable weapons, we see this, on balance, as supporting Serna's position. We find more significant the fact that, when the federal assault-weapon ban ended, Congress didn't require previously-banned semiautomatic weapons to be registered. The fact that semiautomatic weapons are not now, nor have ever been, subject to a blanket registration requirement suggests that mere possession of them does not pose the same risk of physical injury as possession of weapons subject to a blanket federal registration requirement—like silencers and sawed-off shotguns.

**[5]** Our caselaw holds that possession of a weapon not required to be registered can nevertheless be a crime of violence, depending on the context. We have held, for example, that conviction for possession of a melted-down shaving razor by a prison inmate is a crime of violence, because "[t]he confines of prison preclude any recreational uses for a deadly weapon and render its possession a serious threat to the safety of others." *Young*, 990 F.2d at 472. Inmates live in close quarters, and the threat of violence is constant. Violence so inevitably follows possession of a deadly weapon in prison that we equate possession with violence. Not so with semiautomatic weapons in society at large—they may be used for target shooting, hunting, in self-defense or in defense of others or property. Nothing in California Penal Code section 12280 requires proof that Serna's possession occurred in a context prone to violence, and we have no other information about Serna's particular crime. *See* p. 913 *supra*.**⁴**

**[6]** Thus, we conclude that Serna's possession of an assault

⁴The federal Presentence Report contains additional information about Serna's prior assault weapon conviction, but we may not rely on facts from that report in our inquiry. *See United States* v. *Matthews*, 374 F.3d 872, 875 n.1 (9th Cir. 2004); *see also Shepard* v. *United States*, 125 S. Ct. 1254, 1257 (2005); *United States* v. *Lopez-Montanez*, 421 F.3d 926, 931-32 (9th Cir. 2005).

weapon was not a crime of violence for purposes of section 4B1.2(a) of the Sentencing Guidelines.

**SENTENCE VACATED; REMANDED FOR RESEN-TENCING.**