**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

HECTOR REINA-RODRIGUEZ,
*Defendant-Appellant.*

No. 05-10475

D.C. No.
CR-04-2415-TUC-
DCB

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted
June 12, 2006—San Francisco, California

Filed November 15, 2006

Before: Procter Hug, Jr. and Diarmuid F. O'Scannlain,
Circuit Judges, and Roger T. Benitez,* District Judge.

Opinion by Judge Benitez

*The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

18573

**COUNSEL**

Christopher R. Kilburn and Brian I. Rademacher, Assistant Federal Public Defenders, Tucson, Arizona, for the defendant-appellant.

Elizabeth Berenguer, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

## OPINION

BENITEZ, District Judge:

Hector Reina-Rodriguez ("Reina-Rodriguez") appeals his sentence of fifty-one months imprisonment following a conviction for illegal reentry after deportation in violation of 8 U.S.C. § 1326. He argues that application of a sixteen-level enhancement under the United States Sentencing Guidelines ("Guidelines") for his prior conviction in Utah was erroneous.[1] He also argues that the district court's sentence was unreasonable because it improperly considered, as a factor, that he did not plead guilty pursuant to a plea agreement. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. §1291, and affirm.

## FACTS

Reina-Rodriguez was found in Arizona after having been previously deported. He was indicted for illegal reentry in violation of 8 U.S.C. § 1326. He pled guilty to the indictment without a plea agreement.

During his change of plea hearing, Reina-Rodriguez admitted that he had a prior felony conviction. He did not admit the type of conviction or that it was a crime of violence.

At the sentencing hearing, the district court had before it two documents regarding Reina-Rodriguez's prior conviction. The first was the State's charging document entitled "Infor-

---

[1]We recognize that the Guidelines are now advisory. *See United States v. Booker*, 543 U.S. 220 (2005); *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). But, as *Booker* explained, judges are still required "to take account of the Guidelines together with other sentencing goals." 543 U.S. at 259 (citing 18 U.S.C. § 3553(a)). "It is therefore appropriate that we consider whether the district judge correctly interpreted and applied the guidelines below." *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006).

mation," and the second was a judgment of conviction entitled "Minutes Sentence, Judgment, Commitment."

The "Information," as amended, read:

> Amend                                    2nd
> **COUNT 1**: ~~AGGRAVATED~~ BURGLARY, a ~~first~~ degree felony, in violation of Utah Code Ann. § 76-6-203, as follows: That HECTOR AFEN REYNA-RODRIGUEZ . . . entered or remained unlawfully in a building or any portion of a building located at 2521 Gramercy with intent to commit a felony or theft or . . . an assault . . . and in the course of attempting, committing, or fleeing from said burglary . . . (b) used or threatened the immediate use of a dangerous weapon, or (c) possessed or attempted to use any explosive or dangerous weapon and/or intentionally did aid, assist, encourage, command or solicit another to do the same.

(Boldface type and strike-through in original). Thus, as amended, the first line of the "Information" read: "Burglary, a 2nd degree felony." The judgment of conviction stated that Reina-Rodriguez pled guilty to "Burglary (amended)—2nd Degree Felony."[2]

The court also had before it the Pre-Sentence Report ("PSR"), which concluded that Reina-Rodriguez's prior conviction was a crime of violence under the Guidelines. Accordingly, the PSR recommended a 16-level enhancement.[3]

---

[2]The document also showed that Reina-Rodriguez was sentenced to a suspended term of one to fifteen years in prison, 365 days jail time, and three years probation.

[3]As further explained below, Section 2L1.2 of the Guidelines provides that "[i]f the defendant previously was deported, or unlawfully remained in the United States, after — (A) a conviction for a felony that is . . . (ii) a crime of violence . . . increase by 16 levels." U.S.S.G. § 2L1.2(b)(1)(A)(ii).

Reina-Rodriguez objected to the PSR's finding that his prior conviction was a crime of violence. The district court overruled Reina-Rodriguez's objection.[4] In sentencing Reina-Rodriguez, the district court recognized that the Guidelines were advisory. The court found that the base level for a conviction under 8 U.S.C. § 1326 is eight. It increased the base level by 16, however, based on Reina-Rodriguez's prior conviction. The district court then decreased the offense level by three for acceptance of responsibility, and concluded that 21 was the correct offense level. The court next determined Reina-Rodriguez to be in a criminal history category IV, which placed Reina-Rodriguez in a 57 to 71 month range.

After consulting the Guidelines, the district court considered the factors under 8 U.S.C. § 3553(a) and concluded: "since Reina-Rodriguez does plead guilty, did not take the case to trial, that a sentence of—a non-guideline sentence somewhere below the guidelines, but above the plea range, had he taken a plea agreement, might be appropriate in the case just for uniformity purposes." In that regard, the court said:

> I have to show respect to the plea process. Obviously if a court sentences the defendant to the same sentence he would have had, had he taken a plea agreement, then there is no compelling reason for any defendant to take the plea offer.

---

[4]The district court initially found that Reina-Rodriguez's prior conviction was not categorically a crime of violence under the Guidelines. But, after applying the modified categorical approach, the district court concluded that Reina-Rodriguez's prior conviction constituted a "crime of violence" under the Guidelines. Subsequently, ruling on Reina-Rodriguez's Motion To Correct Sentence, the district court appeared to find that Reina-Rodriguez's Utah burglary conviction was categorically a crime of violence under the Guidelines. On appeal, however, "[w]e may affirm on any ground supported by the record even if it differs from the rationale of the district court." *Washington v. Lampert*, 422 F.3d 864, 869 (9th Cir. 2005) (citation omitted).

The court sentenced Reina-Rodriguez to 51 months, 3 years supervised release, and assessed a $100 fine.

## STANDARD OF REVIEW

In reviewing a sentence, "the first step is to determine if the district court made a material error in its Guidelines calculation that serves as the starting point for its sentencing decision." *United States v. Kilby*, 443 F.3d 1135, 1140 (9th Cir. 2006) (citing *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006)). This court reviews "*de novo* a district court's decision that a prior conviction is a crime of violence under the Sentencing Guidelines." *United States v. Velasquez-Reyes*, 427 F.3d 1227, 1229 (9th Cir. 2005) (citing *United States v. Rivera-Sanchez*, 247 F.3d 905, 907 (9th Cir. 2001) (en banc)). A district court's conclusion that a prior conviction may be used for purposes of sentencing enhancement is also reviewed *de novo. See United States v. Gallaher*, 275 F.3d 784, 790 (9th Cir. 2001) (citation omitted).

## REINA-RODRIGUEZ'S UTAH BURGLARY CONVICTION JUSTIFIES A 16-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2L1.2(b)(1)(A).

[1] "Section 2L1.2(b)(1)(A)(ii) provides for a 16-level enhancement if [a] defendant [convicted of illegal entry] has a prior conviction for a crime of violence." *Velasquez-Reyes*, 427 F.3d at 1229; *see also United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 851 (9th Cir. 2005) (citation omitted). Under the Application Notes[5] to Section 2L1.2(b)(1)(A)(ii), a "crime of violence" includes "burglary of a dwelling or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened

---

[5]In so far as we are considering whether the district judge correctly interpreted and applied the guidelines below "[w]e are bound to follow the application notes." *United States v. Lopez-Garcia*, 316 F.3d 967, 970 (9th Cir. 2003) (citation omitted).

use of physical force against the person of another." U.S.S.G. § 2L1.2 application n.1(B)(iii).**[6]** Moreover, an attempt to commit these crimes of violence is itself a crime of violence. *Id.* § 2L1.2 application n.5.

We must now determine whether Reina-Rodriguez's prior conviction fits the definition of a "crime of violence" under the Guidelines. *See, e.g., Rodriguez-Rodriguez*, 393 F.3d at 852 ("Although the application note specifically includes 'burglary of a dwelling' in the definition of 'crime of violence,' a conviction for burglary of a dwelling must meet the generic, uniform definition of burglary to fall under the definition of 'burglary of a dwelling.' " (citations omitted)). We determine this by employing two methods: (1) the categorical approach; and (2) the "modified" categorical approach. *See United States v. Wenner*, 351 F.3d 969, 972 (9th Cir. 2003).

### 1. Categorical Approach

Using the categorical approach, we look "only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990) (citations omitted); *see also United States v. De La Fuente*, 353 F.3d 766, 770 (9th Cir. 2003) (citations omitted). In doing so, we are bound by the state court's interpretation of the statute. *See Guaranty Trust Co. v. Blodgett*, 287 U.S. 509, 513 (1933) (citations omitted).

**[2]** Reina-Rodriguez was convicted in Utah of a felony burglary in the second degree. Utah statutes provide that one can be convicted of felony burglary in the second degree if one

---

**[6]**Under the Application Notes to Section 2L1.2(b)(1)(A)(ii), a "crime of violence" also includes crimes that are not relevant to our analysis, *i.e.*, "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit . . . ." U.S.S.G. § 2L1.2 application n.1((B)(iii).

commits: (1) an attempted aggravated burglary; or (2) a burglary of a dwelling. Specifically, under Utah's general burglary statute, "[a]n actor is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit [a crime]." Utah Code Ann. § 76-6-202(1). If the actor commits the burglary "in a dwelling . . . it is a felony of the second degree." *Id.* § 76-6-202(2). Further, in Utah, a person is "guilty of aggravated burglary if in attempting, committing, or fleeing from a burglary the actor or another participant in the crime": (a) causes bodily injury to any person . . . ; (b) uses or threatens the immediate use of a dangerous weapon against any person . . . ; or (c) possesses or attempts to use any explosive or dangerous weapon. *Id.* § 76-6-203 ("Aggravated burglary").

**[3]** "Aggravated burglary . . . is a first degree felony regardless of whether a dwelling is involved." *State v. Porter*, 705 P.2d 1174, 1178 (Utah 1985) (citation omitted). However, "attempted aggravated burglary [is] a felony of the second degree . . . ." *State v. Harding*, 576 P.2d 1284 (Utah 1978); *see also* Utah Code Ann. § 76-4-102(2) (attempt to commit a first degree felony, other than murder, kidnaping, or a sexual offense, is a second degree felony).

Against this backdrop, we must now determine whether the "full range of conduct encompassed" or prohibited by Utah's statute of conviction for felony burglary in the second degree fits a "crime of violence" under the Guidelines. *Kepilino v. Gonzales*, 454 F.3d 1057, 1061 (9th Cir. 2006) (citing *Cuevas-Gasper v. Gonzales*, 430 F.3d 1013, 1018 (9th Cir. 2005)). In other words, in order for Reina-Rodriguez's prior conviction to categorically fit a "crime of violence" under the Guidelines, the full range of conduct proscribed by Utah's statute of conviction for burglary of a dwelling or an attempted aggravated burglary must both fall within that definition.

**[4]** A "crime of violence" under the Guidelines includes "burglary of a dwelling." U.S.S.G. § 2L1.2 application

n.1(B)(iii). Reina-Rodriguez's conviction for burglary in the second degree does not categorically fit "burglary of a dwelling" under the Guidelines because, in Utah, a conviction for an attempted aggravated burglary does not require an entry into a dwelling. *Porter*, 705 P.2d at 1178; *State v. Harley*, 982 P.2d 1145, 1147 (Utah App. 1999). *See also Wenner*, 351 F.3d at 972. Thus, one convicted of felony burglary in the second degree resulting from an attempted aggravated burglary of a non-dwelling could not have categorically committed a "crime of violence" under the Guidelines.

**[5]** Under the Guidelines, a "crime of violence" also includes "any offense under . . . state . . . law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 application n.1(B)(iii). An attempt to commit this crime is also a crime of violence. *Id.* § 2L1.2 application n.5. However, under Utah law, one can be convicted of attempted aggravated burglary for merely possessing a dangerous weapon while committing or attempting to commit a burglary. *See* Utah Code Ann. § 76-6-203. "[M]erely possessing a weapon doesn't involve the use, attempted use or threatened use of physical force . . . ." *United States v. Serna*, 435 F.3d 1046, 1047 (9th Cir. 2006).[7] Thus, Utah's statute of conviction for attempted aggravated burglary still criminalizes a broader range of conduct than would constitute a crime of violence under § 2L1.2. Consequently, we cannot say based on the fact of conviction and the statutory definition of a Utah felony burglary in the second degree that Reina-Rodriguez's prior

---

[7]The *Serna* opinion states "Our case law holds that possession of a weapon not required to be registered can nevertheless be a crime of violence depending on the context." *Serna*, 435 F.3d at 1049. However both *Serna* and the case cited for the proposition, *United States v. Young*, 990 F.2d 469 ((9th Cir. 1993), were interpreting the career criminal guideline, § 4B1.2. That guideline defines a crime of violence to include "conduct that presents a serious risk of physical injury to another." That language is not in the guideline involved in this case.

conviction was categorically a "crime of violence" under the Guidelines.

## 2.  Modified Categorical Approach

**[6]** "If the statute reaches both conduct that would constitute a crime of violence and conduct that would not, we turn to a modified categorical approach, which allows us to examine documentation or judicially noticeable facts that clearly establish that the defendant's actual offense qualifies as a crime of violence." *De La Fuente*, 353 F.3d at 770 (citation omitted).

Our review under the modified categorical approach is limited. "The purpose of the modified categorical approach is to make the requisite determination respecting the nature of a prior conviction without resorting to the type of mini-trials . . . deem[ed] to be wholly inappropriate in this context." *Parrilla v. Gonzales*, 414 F.3d 1038, 1043 (9th Cir. 2005) (citations and internal quotations omitted). "In keeping with this purpose . . . [the court's] inquiry is 'generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.' " *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)) (citation omitted).

**[7]** Here, there are two documents that we can appropriately review regarding Reina-Rodriguez's prior conviction in Utah—the State's charging document and the judgment of conviction. *See United States v. Bonat*, 106 F.3d 1472, 1476 (9th Cir. 1997) ("We have previously decided that in determining if a defendant pled guilty to generic burglary, considering the indictment and the judgment of conviction does not constitute a factual inquiry forbidden by *Taylor*.") (citation omitted).**[8]** We interpret these documents using common sense.

---

**[8]**Reina-Rodriguez argues that the district court erred by not solely relying on the State's charging document and judgment of conviction. The

*See United States v. Giese*, 597 F.2d 1170, 1178 (9th Cir. 1979) ("An indictment is not to be read in a technical manner, but it is to be construed according to common sense with an appreciation of existing realities.") (citations omitted).

The State's charging document, as amended, reads: "Burglary, a 2nd degree felony . . . ." The judgment of conviction states that Reina-Rodriguez pled guilty to "Burglary (amended)- 2nd Degree Felony."

**[8]** Arguably, it is not entirely clear whether Reina-Rodriguez's conviction resulted from an attempted aggravated burglary or a burglary of a dwelling. But, tellingly, the word "AGGRAVATED," which appeared in the initial charging document, was intentionally stricken from the amended charging document. If Reina-Rodriguez was pleading to an attempted aggravated burglary the word "AGGRAVATED" would not have been intentionally stricken. Furthermore, the word "attempted" would appear somewhere in front of the word aggravated; it does not. Interpreting the state's charging document in a common sense fashion eliminates the possibility that Reina-Rodriguez's conviction for felony burglary in the second degree resulted from an attempted aggravated burglary. Therefore, inasmuch as Reina-Rodriguez was convicted of felony burglary in the second degree under Utah law, but not of an attempted aggravated burglary, he was necessarily and unequivocally convicted of burglary of a dwelling. *See* Utah Code Ann. § 76-6-202(2) ("Burglary is a felony of the third degree unless it [is] committed in a dwelling, in which event it is a felony of the second degree.").

---

record shows that the district court *sua sponte* "did a check of the public property records in Utah," and concluded that the address listed in the State's charging document was "in fact, a single resident building" and that Reina-Rodriguez was "charged with the burglary of a residence." Since we find that the State's charging document and judgment of conviction are sufficient for our analysis, we do not address Reina-Rodriguez's argument.

Burglary of a dwelling under Utah law categorically fits the Guidelines' definition of burglary of a dwelling. In *Taylor*, the Supreme Court defined burglary for sentencing enhancement purposes. 495 U.S. at 598. Under *Taylor*, burglary is "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. "The definition of 'burglary of a dwelling' [under the Guidelines] is the same as the *Taylor* definition of burglary, with the narrowing qualification that the burglary occur in a dwelling." *Rodriguez-Rodriguez*, 393 F.3d at 857 (citation and internal quotations omitted); *see also Wenner*, 351 F.3d at 973 ("[T]he most logical and sensible reading of the Guidelines and the reading that is consistent with our cases is to construe 'burglary of a dwelling' as the *Taylor* definition of burglary, with the narrowing qualification that the burglary occur in a dwelling.").

**[9]** Burglary of a dwelling under the Guidelines requires: 1) an unlawful or unprivileged entry into, or remaining in; 2) a building or structure that constitutes a dwelling; 3) with the intent to commit a crime. *See Rodriguez-Rodriguez*, 393 F.3d at 852 (citing *Taylor*, 495 U.S. at 598; *Wenner*, 351 F.3d at 973).

**[10]** Utah's burglary of a dwelling statute is virtually identical to the Guidelines' definition of "burglary of a dwelling." In Utah, an actor is guilty of burglary of a dwelling, or felony burglary in a second degree, if the actor "enters or remains unlawfully in a building" that constitutes a "dwelling" with the intent to commit a crime. Utah Code Ann. § 76-6-202(1)-(2). Thus, burglary of a dwelling under Utah law constitutes a "crime of violence" under the Guidelines as it categorically fits the Guidelines' definition of "burglary of a dwelling."

Reina-Rodriguez argues that his burglary conviction does not constitute burglary of a dwelling under the Guidelines because Utah courts have held that a burglary conviction does not require unlawful or unprivileged entry. He relies on the

following Utah cases: *State v. Rudolph*, 970 P.2d 1221 (Utah 1998); *State v. Bradley*, 752 P.2d 874 (Utah 1988); and *State v. Pitts*, 728 P.2d 113 (Utah 1986). Reina-Rodriguez's argument lacks merit.

Nonconsensual entry is not an essential ingredient of burglary under the *Taylor* definition. In fact, *Taylor* allows for burglary convictions so long as the defendant formed the intent to commit a crime while unlawfully remaining on the premises, regardless of the legality of the entry. *See Taylor*, 495 U.S. at 598 (defining burglary as "an unlawful or unprivileged entry into, or **remaining in**, a building or other structure, with intent to commit a crime") (emphasis added)). To hold otherwise would render *Taylor*'s "remaining in" language surplusage. Courts avoid "[i]nterpretive constructions which render some words surplusage." *In re Eastport Associates*, 935 F.2d 1071, 1080 (9th Cir. 1991) (quoting *California Mfrs. Ass'n v. Public Utils. Comm'n*, 598 P.2d 836, 840 (1979)); *see also In re Pacific-Atlantic Trading Co.*, 64 F.3d 1292, 1302 (9th Cir. 1995) ("In construing a statute, a court should interpret subsections written in the disjunctive as setting out separate and distinct alternatives.").

It is true that in *Bonat* this court found that although the Arizona statute met the definition of generic burglary the Arizona courts had expanded the definition to include a conviction where the intent to commit the crime was formed after the entry. 106 F.3d at 1475 (citation omitted). In so finding, *Bonat* relied on *State v. Belcher*, 776 P.2d 811 (Ariz. 1989). The Court of Appeals of Arizona found that

> [i]t [was] clear from the evidence that appellant had the intent to steal the two pair of jeans when he put them on and then put his own trousers over them in the fitting room. The requisite intent to commit burglary may be formed after a person enters a store in all innocence.

*Id.* at 812. Accordingly, under Arizona law, a person may be convicted of burglary merely by committing the crime of shoplifting in a building. This court held in *Bonat*, however, that under *Taylor* shoplifting does not meet the generic definition of burglary and, therefore, does not satisfy the categorical approach for determining a crime of violence.

The Utah cases on which Reina-Rodriguez relies do not go as far as the Arizona courts did in *Bonat*. For example, in *Rudolph*, the Utah Supreme Court held that to be convicted of burglary "the actor must commit or form the intent to commit another crime at the time he enters or while he remains **unlawfully** in the building." *Rudolph*, 970 P.2d at 1229 (emphasis in original). Thus, "unauthorized entry" under Utah law necessarily has the same meaning as "unlawful or unprivileged entry" in *Taylor*. Similarly, in *Bradley*, the defendant challenged the "sufficiency of the evidence on the conviction of aggravated burglary," arguing that "he did not enter the . . . premises unlawfully, and thus a crucial element of the crime of burglary was not established." *Bradley*, 752 P.2d at 876. In rejecting the defendant's argument, the Utah Supreme Court found that "the jury was well within its province in finding that defendant entered or remained unlawfully in the . . . home with the intent to commit an assault" as there was evidence that consent to defendant's entry was limited only to a "lawful purpose." *Id.* Lastly, in *Pitts*, although in dicta, the Utah Supreme Court found that "[e]ven an innocent entry into the [premises] would not acquit defendant if he remained therein with the unlawful purpose." *Pitts*, 728 P.2d at 116 (citations omitted). The court further found that "there was no evidence that [the defendant's] entry or presence was with any intent other than to commit theft." *Id.* at 117 (citation omitted).

This court has also held that a "California first degree burglary conviction does not constitute generic burglary because California Penal Code Sections 459 and 460 do not require 'unlawful or unprivileged entry' for a burglary conviction." *Rodriguez-Rodriguez*, 393 F.3d at 852. But significantly, and

unlike Utah's burglary statute, the California's burglary statutes do not include the "remaining in" language set forth in *Taylor*.

Reina-Rodriguez next argues that his conviction is not categorically a "crime of violence" under the Guidelines because Utah defines "building" broadly. We disagree. Reina-Rodriguez correctly argues that Utah defines dwelling as a building, *see* Utah Code Ann. § 76-6-201(2), and under Utah law, a building includes "watercraft" and "aircraft," which are not buildings or structures under federal law. *See* Utah Code Ann. § 76-6-201(1). *See also Taylor*, 495 U.S. at 599 (noting that a few states define burglary more broadly than the federal definition "by including places . . . other than buildings," such as "automobiles, vending machines"); *Wenner*, 351 F.3d at 972 ("Some things that are dwellings under Washington law (*e.g.*, fenced areas, railway cars, and cargo containers) are not buildings or structures under federal law, and so cannot support a conviction for generic 'burglary' under *Taylor*.") (citations omitted). But, although Utah's burglary statute defines "building" more broadly than its federal meaning, it limits "dwelling" to "a building which is usually occupied by a person lodging therein at night . . . ." Utah Code Ann. § 76-6-201(2). Thus, entering or remaining in an ordinary unoccupied car would not qualify as burglary of a dwelling under the statute, and the Supreme Court's concern in *Taylor,* 495 U.S. at 591, would not apply.

*United States v. Sweeten*, 933 F.2d 765 (9th Cir. 1991) is instructive. In that case, the district court refused to enhance a sentence based on a prior conviction for "burglary of a habitation" in Texas because Texas defined "habitation" to include vehicles. The district court concluded that it was not a conviction for " 'burglary' in a generic sense" under *Taylor*. *Id.* at 767. This court reversed and concluded that the statute was limited to such vehicles as "trailers, campers, and mobile homes—whose primary purpose is to serve as a dwelling and not as a mode of transportation." *Id.* at 770. Thus, *Sweeten*

explained that burglary of "a structure or vehicle adapted for the overnight accommodation of persons" constituted the burglary of a "structure" within the generic definition of *Taylor*. *Id.* at 771. It further explained that "[i]n terms of the potential harm to persons, . . . burglary of vehicles such as mobile homes, campers and trailers 'is analogous to the burglary of a building or house.' " *United States v. Sparks*, 265 F.3d 825, 834 (9th Cir. 2001) (quoting and explaining *Sweeten*, 933 F.2d at 771).

The Supreme Court has also explained that Congress categorized burglary as a crime of violence because of its inherent potential harm to persons. Specifically, in the course of its recent examination regarding Congress' intent in including the term "burglary" in Section 924(e)(2)(B)(ii), the Supreme Court noted:

> The legislative history . . . indicates that Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense . . . because of its inherent potential for harm to persons. The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape.

*Taylor*, 485 U.S. at 588. These precise factors are present where a structure is adapted for sleeping or lodging. *See United States v. Becker*, 919 F.2d 568, 573 (9th Cir. 1990) ("The confluence of common sense and precedent lead to the conclusion that the unauthorized daytime entry of the dwelling of another with the intent to commit a larceny or any fel-

ony carries with it a substantial risk that force will be used against the person or property of another.").

Moreover, Utah courts have held that Utah's "second degree burglary [of a dwelling] statute is intended to protect people while in places where they are likely to be living and sleeping overnight." *State v. Cox*, 826 P.2d 656, 662 (Utah 1992). *See United States v. Tighe*, 266 F.3d 1187, 1196 (9th Cir. 2001) ("A state court's interpretation of a statute is binding in determining whether the elements of generic burglary are present." (citation omitted)).

We conclude that Utah's definition of "dwelling" is sufficiently restricted by means of its adaptation requirement to fall within the strictures set forth in *Taylor*, and more specifically to constitute burglary of a dwelling under the Guidelines.

**[11]** In sum, under the modified categorical approach, we find that Reina-Rodriguez's prior conviction in Utah for felony burglary in the second degree resulted from a burglary of a dwelling. We further find that burglary of a dwelling under Utah law categorically fits the Guidelines' definition of "burglary of a dwelling." Accordingly, the district court did not err in finding that Reina-Rodriguez's burglary conviction in Utah warranted a 16-level enhancement under Section 2L1.2(b)(1)(A)(ii).

## THE DISTRICT COURT'S SENTENCE WAS NOT UNREASONABLE

Reina-Rodriguez argues that his sentence was unreasonable because in its sentencing the district court considered as a factor that he did not plead guilty pursuant to a plea agreement. After *Booker*, this court reviews sentences "for reasonableness . . . even when these sentences are within the Guidelines ranges." *United v. Marcial-Santiago*, 447 F.3d 715, 717 (9th Cir. 2006) (citation omitted). "In conducting this review, [this

court] consider[s] whether the district court accurately calcu-
lated the Guidelines range and, if it did, whether the sentence
is reasonable in light of the sentencing factors set forth in 18
U.S.C. § 3553(a)." *Id.*[9]

Here, the district court accurately calculated the Guidelines
range. Reina-Rodriguez was convicted of violating 8 U.S.C.
§ 1326. The applicable sentencing guideline for a violation of
that statute provides:

> **Unlawfully Entering or Remaining in the United
> States**
>
> (a) Base Offense Level: 8
>
> (b)    Specific Offense Characteristics
>
> (1)    Apply the Greatest:
>
> If the defendant previously was deported,
> or unlawfully remained in the United
> States, after—
>
> (A) . . . (ii) a crime of violence, . . . increase
> by 16 levels.

(boldface type in original). As explained above, the district
court correctly determined that Reina-Rodriguez's prior bur-
glary conviction in Utah was a "crime of violence" under the

---

[9]Section 3553(a) factors include: (1) the nature and circumstances of the
offense and the history and characteristics of the defendant; (2) the need
for the sentence imposed; (3) the kinds of sentences available; (4) the
kinds of sentences and the sentencing range established by the Sentencing
Guidelines; (5) pertinent policy statements issued by the Sentencing Com-
mission; (6) the need to avoid unwarranted sentencing disparities among
defendants who have similar criminal records and have been found guilty
of similar conduct; and (7) the need to provide restitution to victims. 18
U.S.C. § 3353(a).

Guidelines. Thus, the district court correctly determined Reina-Rodriguez's offense level as 21 (Base Offense (8) + Specific Offense Characteristics (16) - Acceptance of Responsibility (3) = 21). Also, given the district court's uncontested finding that Reina-Rodriguez's criminal history category was IV, the district court correctly determined that Reina-Rodriguez's resulting sentencing range was 57 to 71 months. *See* U.S.S.G. ch. 5, pt. A.

Moreover, the district court's sentence was not unreasonable. The district court noted that the Guidelines' ranges were advisory, analyzed and rejected Reina-Rodriguez's various arguments, and considered the Section 3553(a) factors. The district court considered Reina-Rodriguez's history and characteristics, which were described in the PSR; the need to promote respect for the law while providing appropriate punishment; and the now-advisory Guidelines range of 57-71 months. After completing this review, the court imposed a sentence that was below the Guidelines range, in part, because Reina-Rodriguez pled "guilty."

**[12]** That the district court considered Reina-Rodriguez did not plead guilty pursuant to a plea agreement did not render his sentence unreasonable. The district court simply noted that the sentence would have been lower "had [Reina-Rodriguez] taken a plea agreement . . . for uniformity purposes." As the district court explained, Reina-Rodriguez "retain[ed] his right of appeal, and so he [did] not get the motion from the government" for a reduction of his offense level. The district court explained it had to "show respect to the plea process. Obviously if a court sentences the defendant to the same sentence he would have had, had he taken a plea agreement, then there is no compelling reason for any defendant to take the plea offer." The district court did not err. *See Marcial-Santiago*, 447 F.3d at 719 ("[W]e conclude that the disparity between Appellants' sentences and the sentences imposed on similarly-situated defendants who are prosecuted in fast-track districts is not unwarranted. It is justified by the benefits

gained by the government when defendants plead guilty early in criminal proceedings."). We conclude that the sentence Reina-Rodriguez received was reasonable, and will not here disturb the discretion of the sentencing court.

**AFFIRMED**.