FILED
United States Court of Appeals
Tenth Circuit

January 3, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LEROYA COZAD,

    Defendant-Appellant.

No. 20-3233

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### (D.C. No. 6:19-CR-10123-EFM-1)

---

Melody Brannon, Federal Public Defender (Kayla Gassmann, Appellate Attorney, with her on the briefs), Kansas City, Kansas, for Defendant-Appellant.

Robert A. Parker, United States Department of Justice, Criminal Division, Appellate Section, Washington, DC (James A. Brown, Assistant United States Attorney, Topeka, Kansas; and Mona Lee M. Furst and Molly M. Gordon, Assistant United States Attorneys, Wichita, Kansas, with him on the brief), for Plaintiff-Appellee.

---

Before **BACHARACH**, **SEYMOUR,** and **PHILLIPS,** Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

---

This appeal raises one issue: whether, under 18 U.S.C. § 3553(a), it is unreasonable for a district court to impose a harsher sentence based on a defendant's decision to plead guilty without a plea agreement.  For the reasons explained below, we hold that it is.

**I**
**Background**

Ms. Leroya Cozad was indicted on a single charge of aiding and abetting the making of counterfeit currency in violation of 18 U.S.C. §§ 2, 471.  During plea negotiations, she offered to plead guilty in exchange for the government's recommendation that she be sentenced to 48 months' probation.  The government countered with an offer to recommend a custodial sentence at the low end of the guideline range.  She declined and entered an open plea.

Following her plea, probation prepared a presentence investigation report that recommended a custodial sentence of between 24 and 30 months based on the United States Sentencing Guidelines.  The PSR's guideline calculation reflected probation's conclusion that Ms. Cozad had "clearly demonstrated acceptance of responsibility for the offense" and was therefore due a reduction of two levels under § 3E1.1(a) of the guidelines.[1]  Neither party objected to the PSR, although both submitted sentencing memoranda advocating for their preferred outcome.  Ms. Cozad advocated for a term of

---

[1] Because Ms. Cozad's adjusted offense level was below 16, she was not eligible for an additional one-level reduction under § 3E1.1(b).

2

probation. The government recommended a custodial sentence of 24 months, the same recommendation it had offered to make during the abortive plea negotiations.

The district court rejected both recommendations and sentenced Ms. Cozad to a prison term of 27 months, the midpoint of the guideline range. In explaining its decision, the district court said the following:

> I think sometimes there's sort of an implicit assumption that an individual is entitled to a sentence at the low end of the guideline range, but there is, of course, no such right. And, *in practice, one of the factors I've used to lean against a low-end guideline range are defendants who submit a plea without a plea agreement*, without the agreements that typically happen in a plea agreement.
>
> That's certainly their right to plead without a plea agreement, but they do not have a right to a low end guideline range sentence, and so it's always been my -- again this isn't a hard-and-fast rule by any means that I apply, but *it's always been my practice to say if someone agrees to a plea agreement, the additional conditions that are obtained in that, they're entitled to additional consideration, which is where I start at a low end guideline range.*
>
> But in my calculation, *without a plea agreement, I have always started with looking more at the mid-tier of the guideline range*, which is where I think the guidelines initially envisioned that courts would operate, and not giving them the additional credit for actually entering into a plea agreement to do that.
>
> *In this case*, having thought about it obviously since our hearing last week, having looked through the briefs that have been filed in this case since that time, as well as additional information I've received from the probation office and going back through the report as well, *it's my conclusion that*, first of all, Ms. Cozad has not shown demonstration that entitles her to a variance from the guideline recommendation of a custodial sentence, and I cannot find that that variance has been earned; and secondly, *in light of the matters that I've just discussed overall, that a low-end guideline range sentence is not appropriate.*

Rec., vol. III at 42–44 (emphasis added).

3

Ms. Cozad's counsel objected, asserting that "the Court has entered its sentence based on Ms. Cozad's choice not to reach a plea agreement with the Government. That's a procedurally unreasonable reason to enter the sentence the Court described." Rec., vol. III at 48. The district court disagreed, leading to Ms. Cozad's appeal.

## II
## Standard of Review

We review a defendant's sentence "for reasonableness under an abuse-of-discretion standard," which applies whether the sentence falls inside or outside of the guideline range. *United States v. Henson*, 9 F.4th 1258, 1284 (10th Cir. 2021) (quoting *Peugh v. United States*, 569 U.S. 530, 537 (2013)). The reasonableness of a sentence includes a procedural component, which relates to the method by which a sentence was calculated, and a substantive component, which relates to the length of the resulting sentence. *Id.* In arguing that the district court impermissibly treated her open plea as an aggravating fact warranting harsher punishment, Ms. Cozad raises a procedural reasonableness challenge. *See United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) ("Generally, a district court's use of an improper factor invokes procedural review."); *United States v. Pinson*, 542 F.3d 822, 835–36 (10th Cir. 2008) ("While the weight the district court places on certain factors is reviewed for substantive unreasonableness, use of an improper factor is reviewed for procedural unreasonableness.").

4

### III
### Discussion

At the outset, we think it is clear that the district court sentenced Ms. Cozad more harshly than it otherwise would have but for her decision to plead guilty without entering into an agreement with the government. Although the district court discussed Ms. Cozad's criminal history and her failure to fully comply with the conditions of her bond, it did so while explaining its rejection of Ms. Cozad's request for a noncustodial sentence. *See* Rec., vol. III at 32, 41–42. When explaining its decision regarding the length of her prison term, the district court first described its customary practice of distinguishing defendants based on the nature of their plea. Then, in accordance with that custom and despite the government's recommendation of a sentence at the low end of the guidelines, the court proceeded to impose a sentence of 27 months at the midpoint of the guideline range. Notably, although the district court stated that its practice was not "a hard-and-fast rule by any means," the court did not explain why it was applying the rule in Ms. Cozad's case. *Id.* Similarly, although the district court made a passing reference to "the agreements that typically happen in a plea agreement," *id.*, the court did not specify what those "agreements" are. On this record, therefore, we cannot but conclude that the district court gave Ms. Cozad a longer sentence than she otherwise would have received simply because she pled guilty without a plea agreement. Whether it was permissible for the district court to do so appears to be a question of first impression in this or any other circuit.

The factors a court may consider in determining a defendant's sentence are set by statute. They are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; . . .
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [by the sentencing guidelines] . . . ;
> (5) any pertinent policy statement [issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2)] . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). It is a form of procedural error to base a sentence on a factor falling outside the scope of the considerations enumerated in § 3553(a). *United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008).

For reasons of history, as well as congressional intent, appellate courts have interpreted § 3553(a) liberally. *Henson*, 9 F.4th at 1293; *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person . . . which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Nevertheless, a district court does not enjoy boundless discretion with respect to the facts it relies on at sentencing. For example, a factor may be impermissible because its consideration is prohibited by statute, *see United States v. Story*, 635 F.3d 1241, 1247–48 (10th Cir. 2011) (holding that

6

18 U.S.C. § 3582(a) prohibited considering the defendant's need for rehabilitation as a factor when deciding whether to impose a term of imprisonment or in determining its length); or because its consideration burdens the exercise of a constitutional right, *see United States v. Cabrera*, 811 F.3d 801, 808-09 (6th Cir. 2016) (holding that a within-guidelines sentence was procedurally unreasonable because it was based on the defendant's refusal to testify); or because the factor is simply irrelevant to the considerations enumerated in § 3553(a), *United States v. Plate*, 839 F.3d 950, 957 (11th Cir. 2016) (holding it unreasonable to sentence a defendant to prison based on her inability to pay restitution because this was "not among the factors listed in § 3553(a)"). Even when the fact ostensibly relates to the defendant's conduct or characteristics, its consideration may be grounds for remand when the fact has no bearing on any of the aims of punishment set forth in § 3553(a)(2).  *See United States v. Burgos*, 276 F.3d 1284, 1288–90 (11th Cir. 2001) (holding a defendant could not be given a harsher sentence due to her refusal to testify against her husband in an unrelated case because doing so would not "'reflect[] the seriousness' of her own offense," "promote respect for the law," or "'provide just punishment for the offense,' to which she plead guilty"); *cf. Rita v. United States*, 551 U.S. 338, 365 (2007) (Stevens, J., concurring) (noting that it

would be unreasonable for a district court to give "harsh sentences to Yankees fans and lenient sentences to Red Sox fans").[2]

Turning to the case at hand, we do not see how the fact of a defendant's open plea, standing alone, bears any meaningful relationship to the § 3553(a) factors. Certainly, it says nothing about a defendant's "history and characteristics," § 3553(a)(1). At bottom, a plea agreement is a contract and, like any other contract, it requires mutuality of assent and an exchange of consideration. *See United States v. Thompson*, 814 F.2d 1472, 1479 (10th Cir. 1987); *United States v. Miles*, 902 F.3d 1159, 1160–61 (10th Cir. 2018). Since either party may reject the other's offer or refuse to negotiate entirely, the fact that the parties failed to reach a mutually satisfactory bargain, without more, can provide no insight into the defendant's character. For the same reason, the absence of a plea agreement provides no information that might aid a district court in determining how much punishment is sufficient to comply with the purposes of sentencing set out § 3553(a)(2). To penalize a defendant based on the absence of a plea agreement alone is arbitrary.

The government argues that a district court may consider the absence of a plea agreement because such agreements often include certain conditions, such as appellate waivers. In *United States v. Tena-Arana*, 738 F. App'x 954, 961–64 (10th Cir. 2018)

---

[2] Justice Stevens described the baseball-allegiance hypothetical as a substantive error, but "'[s]ubstance' and 'procedure' are admittedly chameleon-like terms." *Rita,* 551 U.S. at 383 n.6. (Scalia, J., concurring in part and concurring in the judgment). Justice Scalia, for example, described the same error as procedural. *Id.*

(unpublished), we held that a district court may consider a negotiated appellate waiver at sentencing because such a waiver may demonstrate an "acceptance of responsibility" beyond the guilty plea itself and may therefore be relevant to the question of how much punishment is sufficient to achieve the goals of sentencing.  The government reasons that if a sentencing court may grant additional leniency in recognition of conditions in a plea agreement that show acceptance of responsibility, it follows that the court may view a defendant's refusal to accept such conditions as demonstrating a corresponding lack of acceptance and withhold that leniency.  Accordingly, the government argues, because Ms. Cozad's open plea was not subject to such conditions, the district court was entitled to "withhold the additional leniency."

This argument misses the mark.  The issue in *Tena-Arana*, a nonprecedential opinion, was whether the district court could consider a defendant's negotiated appellate waiver when deciding whether to vary downward.  It was not whether the court could vary downward based on the existence of an agreement in and of itself.  Because the district court in this case cited the absence of a plea agreement, rather than the absence of an appellate waiver or any other term that an agreement might have included, *Tena-Arana* provides no support for the government.

Furthermore, although we held in *Tena-Arana* that a district court "*may* at least sometimes find" that an appeal waiver is relevant to the § 3553(a) factors, 738 F. App'x at 963, the *presence* of a waiver in an existing plea agreement is fundamentally different than the *absence* of an appeal waiver in an agreement that never happened and whose

terms remain purely hypothetical.  When the parties reach an agreement, a district court can evaluate the terms, including any waivers, in the context of the agreement as a whole to determine the degree to which the waivers may show some additional acceptance of responsibility.  By contrast, when the defendant enters an open plea, the court may not know whether any plea agreement was offered, let alone under what terms.  Indeed, there is no evidence in this case that an appellate waiver was ever discussed.  In these circumstances, without more information, it is unreasonable to penalize the defendant for the absence of an appellate waiver in a nonexistent agreement.

The government further argues that courts may "for uniformity purposes" grant "additional leniency" to defendants who enter into plea agreements and withhold it from those who do not.  Aple. Br. at 23 (quoting *United States v. Reina-Rodriguez*, 468 F.3d 1147, 1158 (9th Cir. 2006)).[3]  The government reasons that, were a court required to sentence a defendant who pleads open "to the same sentence he would have had, had he

---

[3]  In addition to *Reina-Rodriguez,* the government cites § 3553(a)(6) and the need to avoid "'unwarranted sentence disparities' among similarly situated defendants."  Aple. Br. at 23.  Although the government's argument on this point is not entirely clear, the thrust of it seems to be that § 3553(a)(6) implicitly instructs courts to avoid unwarranted sentence *similarities* among defendants who accept plea agreements and those who do not.  Having briefly gestured at this point, however, the government does nothing to develop the argument, which in any case does not withstand scrutiny. Section 3553(a)(6) instructs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  But the manner of a defendant's guilty plea has nothing to do with his record or criminal conduct, so the presence or absence of a plea agreement is entirely irrelevant to § 3553(a)(6).  Moreover, because otherwise identical defendants may make different decisions with respect to a plea agreement, to impose different sentences on that basis tends to create disparities among like defendants rather than to eliminate them.

10

taken a plea agreement," there would be "no compelling reason" for a defendant to accept the conditions of a plea bargain. *See id.* (quoting *Reina-Rodriguez*, 468 F.3d at 1158). We are not convinced.

As a preliminary matter, the government's argument proceeds from a false premise. A rule that forbids district courts from treating a defendant's open plea as an aggravating fact in and of itself would not leave defendants with "no compelling reason" to enter a plea agreement. In cases where there are multiple potential charges, the government would still be able to leverage them during negotiations. *See* Fed. R. Crim. P. 11(c)(1)(A); *Bordenkircher v. Hayes*, 434 U.S. 357, 362–64 (1978) (holding that a prosecutor may pursue additional charges against a defendant who refuses a plea bargain). And even in cases where there is only a single viable charge, the government could threaten to recommend a harsher sentence or to pursue an aggressive interpretation of the guidelines. *See* Fed. R. Crim. P. 11(c)(1)(B), (C). Consequently, because courts are free to take the government's recommendation into account, a defendant who refuses to plea bargain would still risk receiving a higher sentence in many cases.

More fundamentally, the government's argument fails because providing a "compelling reason" for a defendant to enter a plea agreement, whether by granting "additional leniency" or withholding it, is not a valid sentencing rationale. Section 3553(a) provides that courts are to impose no more punishment than is necessary to comply with the four penological goals enumerated in § 3553(a)(2). When a court

imposes a sentence to achieve some other purpose, that sentence is unlawful. *Burgos*, 276

F.3d at 1289–90.

We do not see how any of the permissible aims of sentencing are advanced by

distinguishing between defendants based on the manner in which they plead guilty.

Imposing additional punishment on a defendant because her plea was not the result of a

bargain does nothing to more accurately "reflect the seriousness of the offense,"

"promote respect for the law," or "provide just punishment for the offense," *see*

§ 3553(a)(2)(A); it does nothing to deter criminal conduct, *see* § 3553(a)(2)(B); it does

nothing to protect the public from further crimes of the defendant, *see* § 3553(a)(2)(C);

and it does nothing to address the defendant's rehabilitative needs, *see* § 3553(a)(2)(D).

Given the limited objectives of punishment enumerated in § 3553(a), we do not

find the Ninth Circuit's decision in *Reina-Rodriguez* persuasive.  In that case, the

government declined to move for a downward departure under § 5K3.1 of the Sentencing

Guidelines because the defendant had not entered a plea agreement under the district's

fast-track sentencing program. *See Reina-Rodriguez*, 468 F.3d at 1158.  At sentencing,

the district court concluded that the defendant was entitled to some leniency because he

pled guilty but reasoned that "for uniformity purposes" and "to show respect to the plea

process," his sentence should not be so low as to fall within the guideline range that

would have applied had he entered a fast-track agreement, which would have required

him to waive his appeal. *Id.* at 1151.  "Obviously if a court sentences the defendant to

the same sentence he would have had, had he taken a plea agreement, then there is no

compelling reason for any defendant to take the plea offer," the court reasoned. *Id.* On appeal, the Ninth Circuit held that the district court's rationale was permissible, citing an earlier case holding that sentencing disparities caused by fast-track programs are not "unwarranted" under § 3553(a)(6). *Id.* at 1159–60 (citing *United States v. Marcial–Santiago*, 447 F.3d 715, 719 (9th Cir. 2006)).

We do not find this reasoning sufficient to support the broad proposition that a district court may, "for uniformity purposes" and to provide a "compelling reason" for defendants to enter plea agreements, extend "additional leniency" to defendants who enter into plea agreements and withhold it from those who do not. The court in *Reina-Rodriguez* did not explain how punishing a defendant based on the nature of his plea furthers a valid penological purpose under § 3553(a)(2) or relates to any of the other § 3553(a) factors in general.

To be clear, we do not pass judgment on whether *Reina-Rodriguez* was correctly decided. The Sentencing Commission adopted § 5K3.1 at the direction of Congress, which sought to incentivize early plea deals by accommodating fast-track programs within the guidelines. *See* Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108–21, 117 Stat. 650 (2003). Consequently, § 5K3.1 arguably reflects a congressional intent that defendants who plead pursuant to fast-track agreements receive leniency not shown to defendants who enter open pleas. It is therefore at least arguable that, notwithstanding the limited penological purposes provided for under § 3553(a)(2), § 5K3.1 implicitly permits a

13

district court to impose higher sentences on defendants who enter open pleas in order to provide a "compelling reason" for them to enter fast-track agreements. That said, we need not resolve any tension between § 3553(a)(2) and § 5K3.1 because § 5K3.1 only applies to agreements made under fast-track resolution programs, and no such program was at play here. The district court's decision to select a higher sentence for Ms. Cozad was an expression of its own policy in favor of plea agreements, not congressional intent.

That Ms. Cozad's sentence was the result of the district court's own custom is significant. A court's role in plea bargaining, at least in the federal system, is generally limited to accepting or rejecting an agreement after the parties have reached one. *See* Fed. R. Crim. P. 11(c) ("The court must not participate in [plea agreement] discussions."). This is not to say that the district court violated Rule 11 in this case or even that Rule 11 itself prohibits courts from imposing harsher sentences on defendants who plead guilty without a plea agreement. *See United States v. Carver*, 160 F.3d 1266, 1269 (10th Cir. 1998) ("While it is true that [now Rule 11(c)] prevents a judge from shaping the terms of a plea bargain or pressuring a criminal defendant to settle his case, these stringent prohibitions . . . do not apply once "the parties ha[ve] concluded their agreement, and the prosecutor ha[s] laid it out in open court . . . ."). It is only to say that, in the federal system, courts are intended to have a limited role with respect to the plea-bargaining process. And it is the role of the government, not the court, to provide a defendant with "compelling reasons" for entering into a plea agreement.

## IV
## Conclusion

We hold that, under 18 U.S.C. § 3553(a), it was procedurally unreasonable for the district court to impose a harsher sentence on Ms. Cozad based on her decision to enter an open plea.  Because the district court abused its discretion, we vacate Ms. Cozad's sentence and remand for resentencing.