**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HECTOR REINA-RODRIGUEZ,
　　　　　*Petitioner-Appellant,*

　　　　　v.

UNITED STATES OF AMERICA,
　　　　　*Respondent-Appellee.*

No. 08-16676

D.C. Nos.
4:07-cv-00640-DCB
4:04-cr-02415-DCB-
GE

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted
May 9, 2011—San Francisco, California

Filed June 22, 2011

Before: Betty B. Fletcher and Sidney R. Thomas,
Circuit Judges, and Nancy Gertner, District Judge.*

Opinion by Judge Thomas

───────────────

*The Honorable Nancy Gertner, District Judge for the U.S. District
Court for Massachusetts, Boston, sitting by designation.

## COUNSEL

John M. Sands, Federal Public Defender, Christopher R. Kilburn, Brian I. Rademacher, Assistant Federal Public Defenders, Tucson, Arizona, for appellant Reina-Rodriguez.

Dennis K. Burke, United States Attorney, Christina M. Cabanillas, Appellate Chief, Elizabeth Adair Strange, Assistant United States Attorney, Tucson, Arizona, for appellee United States of America.

---

## OPINION

THOMAS, Circuit Judge:

In this appeal, we consider whether our decision in *United States v. Grisel* has retroactive effect. We conclude that it does, and we reverse the judgment of the district court.

I

Hector Reina-Rodriguez appeals the district court's denial of his 28 U.S.C. § 2255 motion to correct a federal sentencing enhancement imposed on account of his Utah conviction for burglarizing a "dwelling." Reina-Rodriguez was indicted in federal district court for illegal re-entry after deportation, in violation of 8 U.S.C. § 1326 and he pled guilty without a plea agreement.

Under the Sentencing Guidelines, a violation of 8 U.S.C. § 1326 has a base offense level of eight. U.S.S.G. § 2L1.2. The district court applied a 16-level enhancement because Reina-Rodriguez had previously been convicted of second-degree felony burglary in Utah—specifically, "burglary of a dwelling" under Utah Code Ann. § 76-6-202(2)—which the court concluded was a felony "crime of violence" under the

Guidelines. *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii) & n.1(B)(iii). Taking into account other adjustments and mitigating factors, the district court sentenced Reina-Rodriguez to 51 months, followed by 36 months of supervised release, and a $100 special assessment.

At his sentencing, Reina-Rodriguez objected to the 16-level enhancement. He conceded that he had been convicted of burglarizing a dwelling under Utah law. But he claimed the enhancement did not apply because "dwelling" was defined more broadly under Utah law, *see* Utah Code Annotated § 76-6-201(2),[1] than under the Guidelines and the record did not establish that the building he burglarized was a "dwelling" under the Guidelines. As a result, he argued, his Utah burglary conviction did not qualify as burglary of a dwelling under the Guidelines.

The district court disagreed. The judge told Reina-Rodriguez at sentencing that he had conducted a *sua sponte* investigation and had taken judicial notice of public property records in Weber County, Utah, which showed that the burglarized building was a single-resident building and, hence, a "dwelling" under the Guidelines. Thus, the court concluded, Reina-Rodriguez's conviction matched the Guidelines' definition of burglary.

After being sentenced, Reina-Rodriguez filed a Rule 35 motion to modify his sentence. *See* Fed. R. Crim. P. 35(a). He argued that the district court erred by not providing him notice of its *sua sponte* investigation or its reliance on the public property records. The district court denied the motion, concluding that any error was harmless.

Reina-Rodriguez filed a direct appeal, challenging the 16-

---

[1]Under Utah Code Annotated § 76-6-201(2), "[d]welling" means a building that is usually occupied by a person lodging in the building at night, whether or not a person is actually present.

level enhancement. A panel of our Court affirmed the district court. *United States v. Reina-Rodriguez*, 468 F.3d 1147 (9th Cir. 2006). The panel concluded that it did not need to address the question of whether the district court correctly relied on the public property records. *Id.* at 1154 n.8. Instead, the panel applied the categorical and modified categorical analysis first articulated in *Taylor v. United States*, 495 U.S. 575 (1990),[2] and determined that "burglary of a dwelling under Utah law categorically fits the Guidelines' definition of burglary of a dwelling." *Reina-Rodriguez*, 468 F.3d at 1157. As part of its analysis, the panel reasoned that structures adapted for sleeping or lodging, which are "dwellings" under Utah law, categorically qualify as dwellings under the Guidelines. *See id.* at 1156-57. Thus, the panel concluded, the district court correctly applied the 16-level enhancement.

After the panel affirmed the district court in *Reina-Rodriguez*, our Court issued an en banc opinion in *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc). In *Grisel*, we overruled *Reina-Rodriguez* and other decisions "to the extent that [they] suggest[ed] that state statutes satisfy [*Taylor*'s] categorical inquiry when they define burglary to include non-buildings adapted for overnight accommodation . . . ." 488 F.3d at 851 n.5. After *Grisel*, courts must utilize

---

[2]To determine whether a prior conviction qualifies as a "crime of violence" under U.S.S.G. § 2L1.2, we first apply the "categorical approach." *United States v. Espinoza-Morales*, 621 F.3d 1141, 1144 (9th Cir. 2010).

> Under that approach, we first consider whether a prior offense is categorically a crime of violence by assessing whether the full range of conduct covered by the statute falls within the meaning of that term. If the statute of conviction is overbroad—that is, if it punishes some conduct that qualifies as a crime of violence and some conduct that does not—it does not categorically constitute a crime of violence. In that case, we must then apply the "modified categorical approach" to determine whether the record of conviction shows that the defendant was convicted of the elements of the generically defined crime.

*Id.* (citations and internal quotation marks omitted).

the modified categorical approach to determine whether a "dwelling" in Utah meets the Guidelines' definition of "dwelling." *See id.* A non-building adapted for accommodation—e.g., a vehicle or boat—may still qualify as a "dwelling" under the Guidelines, but "it does not do so categorically." *Id.*

In light of *Grisel*, Reina-Rodriguez filed a motion with the district court under 28 U.S.C. § 2255, asking it to vacate, set aside, and correct his sentence. He argued that *Grisel* should be applied retroactively and that his conviction should be set aside because "the *Grisel* court specifically overruled the previous *Reina-Rodriguez* panel's opinion." The district court denied the motion because Reina-Rodriguez did not "establish that the decision in *Grisel* should operate retroactively or that *Grisel* provides him any relief."

Reina-Rodriguez moved for reconsideration, but the district court denied that motion, as well. The district court acknowledged that *Grisel* overruled *Reina-Rodriguez*, at least in part: "[A]fter *Grisel*, a modified categorical analysis must be utilized in the Ninth Circuit to determine if there has been a crime of violence that involved a dwelling as defined by *Grisel*." But, the court reasoned, both it and we had met the dictates of the new rule by applying a modified categorical approach.

Reina-Rodriguez requested a certificate of appealability, but the district court denied the request. Among other reasons, it concluded that "the issues raised in the COA have previously been addressed to, seriously considered by, and resolved against this Court and the Ninth Circuit Court of Appeals." We, however, granted Reina-Rodriguez's request for a certificate of appealability with respect to the question of "whether appellant's sentence is unlawful based on his sentencing enhancement for a prior crime of violence based on a Utah burglary conviction."

We have jurisdiction, under 28 U.S.C. § 2253, to review the district court's denial of Reina-Rodriguez's § 2255 motion and his motion for reconsideration. We review de novo: (1) the district court's denial of a 28 U.S.C. § 2255 motion, *United States v. Gamba*, 541 F.3d 895, 898 (9th Cir. 2008); (2) the district court's interpretation of the Sentencing Guidelines, *United States v. Salazar-Mojica*, 634 F.3d 1070, 1072 (9th Cir. 2011); and (3) all other questions of law, *United States v. Millis*, 621 F.3d 914, 916 (9th Cir. 2010).

## II

**[1]** Generally speaking, new constitutional rules of criminal procedure do not operate retroactively for cases filed by state prisoners[3] seeking collateral federal habeas relief. *Teague v. Lane*, 489 U.S. 288, 310 (1989). The primary question in this case is whether *Teague* precludes retroactive application of *Grisel*. We conclude that it does not.

The threshold questions for *Teague* application are whether the articulated rule is (1) a new constitutional rule and (2) procedural or substantive. If the threshold qualifications for *Teague* applicability are satisfied, there are two identified additional exceptions to the doctrine. *Beard v. Banks*, 542 U.S. 406, 411 (2004) (citations and internal quotation marks omitted). The first *Teague* exception that the Supreme Court has described is for "rules forbidding punishment of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Id.* at 416 (citations and internal quotation marks omitted). However, as the Supreme Court has noted, rules falling under this "exception" are "more accurately characterized as substantive rules not subject to the bar." *Schriro v. Summerlin*, 542 U.S. 348, 352 n.4 (2004). In other words, what has been categorized traditionally as an exception is a

---

[3]But see subsection C, *infra*, discussing our application of *Teague* to federal prisoners' § 2255 motions.

restatement of the threshold requirement that the new rule be procedural rather than substantive. *See Beard*, 542 U.S. at 411 n.3 (citations and internal quotation marks omitted).

Under the second exception, *Teague* does not apply to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 417 (citations and internal quotation marks omitted).

There are several reasons why *Teague* does not apply to *Grisel*.

A

First, *Teague* applies only to "new *constitutional* rules of criminal procedure." *Danforth v. Minnesota*, 552 U.S. 264, 274 (2008) (quoting *Teague*, 489 U.S. at 310) (emphasis added). If the new rule is not founded on constitutional concerns, it does not implicate *Teague*. *See, e.g.*, *United States v. Talk*, 158 F.3d 1064, 1071 (10th Cir. 1998) (concluding that retroactive application of a decision was not *Teague* barred because the decision was "neither new nor constitutional. . . . [The] prescriptions [of the decision] are not constitutional."), *abrogated on other grounds as recognized in United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004); *Oliver v. United States*, 90 F.3d 177, 179 (6th Cir. 1996) ("*Teague* stands for the proposition that new constitutional rules of criminal procedure will not be announced or applied on collateral review" (quotation marks and citation omitted)).

**[2]** Here, Reina-Rodriguez seeks to avail himself of a rule from *Grisel* that limits the definition of burglary under the Armed Career Criminal Act. *Grisel* is a new rule. *See Whorton v. Bockting*, 549 U.S. 406, 416 (2007) ("The explicit overruling of an earlier holding no doubt creates a new rule." (quoting *Saffle v. Parks*, 494 U.S. 484, 488 (1990))). But it is not a new *constitutional* rule, since it does not implicate constitutional rights. The rule simply delimits the conduct that

qualifies as burglary under *Taylor*'s categorical-approach analysis. As a result, *Teague*'s retroactivity bar does not apply.

B

Second, as we have previously explained, a "threshold question in a *Teague* analysis is whether the rule that the petitioner seeks to apply is a substantive rule or a procedural rule, because '*Teague* by its terms applies only to procedural rules.' *Bousley v. United States*, 523 U.S. 614, 620 (1998)." *Hayes v. Brown*, 399 F.3d 972, 982 (9th Cir. 2005). "New substantive rules generally apply retroactively." *Summerlin*, 542 U.S. at 351.

"For *Teague* purposes, a new rule is one of 'procedure' if it affects the operation of the criminal trial process, and a new rule is one of 'substance' if it alters the scope or modifies the applicability of a substantive criminal statute." *Hayes*, 399 F.3d at 982 (citing *Bousley*, 523 U.S. at 620). Substantive rules "include[ ] decisions that narrow the scope of a criminal statute by interpreting its terms . . . ." *Summerlin*, 542 at 351.

In *Grisel*, we considered the scope of a state criminal statute, Or. Rev. Stat. § 164.215(1), in the context of ascertaining the scope of a federal criminal statute, 18 U.S.C. § 922(e). *See* 488 F.3d at 845. In doing so, we carefully examined the statutory history, congressional intent, and Supreme Court construction of the federal statute. *Id.* at 847-49. We concluded that "second-degree burglary under Oregon law is not a categorical burglary for purposes of the [Armed Career Criminal Act] . . . ." *Id.* at 851. One could hardly have a clearer example of a "decision[ ] that narrow[s] the scope of a criminal statute by interpreting its terms . . . ." *Summerlin*, 542 U.S. at 351; *see also United States v. Shipp*, 589 F.3d 1084, 1091 (10th Cir. 2009) (holding that the Supreme Court's construction of the scope of the Armed Career Criminal Act was a

decision of substance, entitled to retroactive effect in federal habeas proceedings).

**[3]** *Grisel* was grounded in substantive law, not criminal procedure. In short, as the Supreme Court has instructed, *Teague*'s anti-retroactivity principle "is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." *Bousley*, 523 U.S. at 620. As such, *Teague* does not apply here.

The Government's arguments to the contrary are not persuasive. The Government first remarks that *Grisel* "did not alter the range of conduct or the class of persons that Utah law may punish for second degree burglary." Of course it did not, but that is quite beside the point. *Grisel* altered the punishment that can be imposed on federal defendants under the Armed Career Criminal Act. Under *Grisel*, federal courts can no longer categorically enhance a sentence for such defendants if the underlying state statute defines "burglary to include non-buildings adapted for overnight accommodation." 488 F.3d at 851 n.5.

Second, the Government argues, "[T]he new rule [only] altered the permissible methods for determining" whether a sentencing enhancement can be imposed on account of a state burglary conviction. Not so. *Grisel* did not alter the procedural dimensions of *Taylor*'s categorical approach. Rather, it altered the conduct that substantively qualifies as burglary under the categorical approach.

Because *Grisel* announced a substantive rule, rather than a procedural one, *Teague* does not bar retroactive application of *Grisel*.

## C

Although we need not, and do not, reach this question, we must note before leaving our discussion of *Teague* that there

is some doubt under current Supreme Court jurisprudence whether *Teague* applies to *federal* prisoners, such as Reina-Rodriguez, who seek federal habeas relief. As Chief Justice Rehnquist noted, the *Teague* rule was "motivated by a respect for the States' strong interest in the finality of criminal convictions, and the recognition that a State should not be penalized for relying on 'the constitutional standards that prevailed at the time the original proceedings took place.' " *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (quoting *Teague*, 489 U.S. at 306).

Recently, in *Danforth*, Justice Stevens discussed *Teague* at length and further amplified that "the text and reasoning of Justice O'Connor's opinion also illustrate that the rule was meant to apply only to federal courts considering habeas corpus petitions challenging state-court criminal convictions." 552 U.S. at 279. To be sure, *Danforth* did not directly consider whether *Teague* applied to federal prisoners seeking federal habeas relief; it concerned a different question. However, as the Sixth Circuit has noted, there is now some doubt as to whether *Teague* applies to federal-prisoner petitioners. *See Duncan v. United States*, 552 F.3d 442, 444 n.2 (6th Cir. 2009) ("It is not entirely clear that *Teague*'s framework is appropriate for federal habeas petitions under 18 U.S.C. § 2255 because many of the comity and federalism concerns animating *Teague* are lacking. . . . But it has been this Court's practice to apply *Teague* to § 2255 petitions, and we adhere to it today.").

After *Lockhart*, but prior to *Danforth*, we squarely held that *Teague* applied to federal prisoner petitioners. *United States Sanchez-Cervantes*, 282 F.3d 664, 667-68 (9th Cir. 2002); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We have already held that *Teague* applies equally to sections 2254 and 2255 habeas cases." (citing *Sanchez-Cervantes*)). We need not consider in this case whether that holding requires re-examination in light of *Danforth*'s con-

struction of *Teague*—a question that we highlight, but leave for another day.

### D

For the reasons we have discussed, *Grisel* applies to this case, and the district court erred in concluding otherwise. *Grisel* was a non-constitutional, substantive decision concerning the reach of a federal statute. *Grisel* overruled the prior holding in this case that the Utah conviction categorically qualified as a predicate offense under the Armed Career Criminal Act. That conclusion applies to this habeas proceeding, and the district court erred in concluding that it did not.

### III

**[4]** Having decided that the Utah burglary does not categorically qualify as a predicate offense, we must now decide whether the district court erred in concluding that it qualified under a modified categorical analysis. Under that familiar examination, if the statute criminalizes conduct that would not constitute an aggravated felony under federal sentencing law, as is the case here, then the conviction may not be used for sentence enhancement unless the record includes " 'documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes.' " *United States v. Rivera-Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001) (en banc) (quoting *United States v. Casarez-Bravo*, 181 F.3d 1074, 1077 (9th Cir. 1999)), *superseded on other grounds by* U.S.S.G. § 2L1.2 cmt. n.4 (2002), *as recognized in United States v. Narvaez-Gomez*, 489 F.3d 970, 977 (9th Cir. 2007). " '[I]f the statute and the judicially noticeable facts would allow the defendant to be convicted of an offense other than that defined as a qualifying offense by the guidelines, then the conviction does not qualify as a predicate offense.' " *Rivera-Sanchez*, 247 F.3d at 908 (quoting *Casarez-Bravo*, 181 F.3d at 1077).

**[5]** Thus, the relevant inquiry is whether the judicially noticeable documents establish that the conviction necessarily includes all of the elements of the qualifying offense. *Rosas-Castaneda v. Holder*, 630 F.3d 881, 886 (9th Cir. 2011). Judicially noticeable documents under the modified categorical approach include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," as well as other documents with sufficient indicia of reliability. *Shepard v. United States*, 544 U.S. 13, 16 (2005); *see also United States v. Snellenberger*, 548 U.S. 699, 701-02 (9th Cir. 2008) (en banc) (per curiam).

## A

With these considerations in mind, we must examine the judicially noticeable documents in this case and determine whether they establish that the defendant committed the "crime of burglary of a dwelling," as that crime has been generically defined. The generic definition of "burglary of a dwelling" under the Guidelines is the " 'unlawful or unprivileged entry into, or remaining in, a building or other structure [that is a dwelling], with intent to commit a crime.' " *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 852 (9th Cir. 2005) (quoting *Taylor*, 495 U.S. at 598).

The salient question for us is whether the judicially noticeable documents in this case establish that the burglary was of a "dwelling." After *Grisel*, the modified categorical analysis requires courts to analyze the nature of the structure to determine whether it is a "dwelling" under the Guidelines. We have held that a person's residential house qualifies. *See Reina-Rodriguez*, 468 F.3d at 1154-58; *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1196-97 (9th Cir. 2006); *United States v. Matthews*, 374 F.3d 872, 877-80 (9th Cir. 2004); *United States v. Wenner*, 351 F.3d 969, 972-74 (9th Cir. 2003).

However, after *Grisel*—and contrary to our reasoning in this case on direct appeal—"a non-building adapted for overnight accommodation" no longer qualifies automatically as a "dwelling" under the Guidelines. *Grisel*, 488 F.3d at 851 n.5. A non-building might qualify in some circumstances, but "it does not do so categorically." *Id.*

B

In this case there are five documents urged for our consideration: (1) the information; (2) the judgment; (3) the presentence report; (4) the district court's report of its *sua sponte* property investigation; and (5) a transcript of the state court plea colloquy.

1

The information and the judgment of conviction are documents that we may properly consider under the modified categorical approach. *Shepard*, 544 U.S. at 16. However, they do not establish that the Utah conviction qualifies as a "burglary of a dwelling." The information charges only that Reina-Rodriguez "entered or remained unlawfully in a building or any portion of a building located at 2521 Gramercy . . . ." The judgment merely states that Reina-Rodriguez was convicted of "BURGLARY a 2nd Degree Felony . . . ."

**[6]** Thus, neither the charging document nor the judgment establish that the burglary was of a dwelling. At most, they show that the defendant was convicted under Utah Code Ann. § 76-6-202(2), which we have held does not establish that the defendant was convicted of the crime of "burglary of a dwelling." But they do not resolve the question of whether the dwelling was a "a non-building adapted for overnight accommodation," which could be a "dwelling" under Utah law but not necessarily a "dwelling" under the Guidelines after *Grisel*. *See Grisel*, 488 F.3d at 851 n.5; *Reina-Rodriguez*, 468 F.3d at 1156-57. And whether the structure was located at a street

address is of little import, since structures or buildings that are not dwellings under the Guidelines could also have been located at the street address.

2

A district court may rely on an uncontroverted presentence report for purposes of a categorical analysis when "the issue is only whether the documents provided by the probation officer supported the *fact of* the . . . conviction." *United States v. Felix*, 561 F.3d 1036, 1045 (9th Cir. 2009) (emphasis added). But it is inappropriate to use a presentence report "to determine the *type* or *character* of the conviction." *Id.* (emphasis in original). Accordingly, a district court cannot rely on a presentence report when employing a modified categorical analysis. As we noted in *United States v. Corona-Sanchez*, 291 F.3d 1201, 1212 (9th Cir. 2002) (en banc), "[A] presentence report reciting the facts of the crime is insufficient evidence to establish that the defendant pled guilty to the elements of the generic definition of a crime when the statute of conviction is broader than the generic definition." *See also United States v. Franklin*, 895 F.2d 1231, 1237-38 (9th Cir. 1990). Ascertaining whether Reina-Rodriguez's conviction under Utah Code Ann. § 76-6-202(2) qualifies as a "crime of violence" requires resort to the modified categorical approach; the contents of the presentence report, therefore, may not be consulted.[4]

---

[4]Moreover, even if it *could* be consulted, the presentence report does nothing to narrow Reina-Rodriguez's crime of conviction to generic burglary. The only thing it states is the probation officer's view that because the building Reina-Rodriguez entered was "identified by [a] street address," it could not have been "a 'watercraft, aircraft,' etc." As we have already explained, a street address alone does not rule out the possibility that Reina-Rodriguez was convicted of burglarizing a non-dwelling building—such as an unattached garage or shed—at that address.

3

The district court also relied on its own independent examination of Utah property records in concluding that the defendant had committed the offense of burglary of a dwelling. At sentencing, the judge stated:

> Furthermore, my office did a check of the public property records in Utah, which I think this court can take judicial notice of—I can take judicial notice of—in fact I think the documents can be considered judicially noticeable for purposes of enhancement, and those property transfer records for Weaver County Utah show that the address as listed in the indictment at 2521 Jamerci Avenue (ph) is, in fact, a single resident building. So Mr. Reina-Rodriguez appears to have been charged with the burglary of a residence. And by statute and by public records that is a dwelling, and therefore I think he committed a burglary, a crime of violence and should be enhanced by 16 levels.

The district court did not place the document in the record, so we have no means of reviewing it. It was not part of the presentence report, and the parties had no notice before sentencing that the court would consider it.

In any event, the court erred in considering the document—as the government concedes on appeal—and it cannot form part of a modified categorical analysis.[5] A central thesis of *Taylor* is the avoidance of "subsequent evidentiary enquiries into the factual basis for the earlier conviction." *Shepard*, 544 U.S. at 20. Such inquiries are the "evil *Taylor*

---

[5]Here again, the fact that "a single resident building" is located at the street address in question does not mean that it is the *only* building at that address that Reina-Rodriguez could have been convicted of burglarizing. *See* note 4, *supra*.

sought to prevent—inquiries into the underlying facts that would essentially turn the sentencing hearings into mini-trials on the issue of whether the prior crimes were committed." *Franklin*, 235 F.3d at 1170 (quoting *United States v. Bonat*, 106 F.3d 1472, 1476 (9th Cir. 1997)). Under *Taylor*, "respect for congressional intent and avoidance of collateral trials require that evidence of generic conviction be confined to records of the convicting court approaching the certainty of the record of conviction in a generic crime State." *Shepard*, 544 U.S. at 23.

[7] Thus, the "judicially noticeable documents" that are appropriate for consideration are materials such as the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16. We have held on numerous occasions that, under the modified categorical approach, courts are to conduct only a limited examination of "the record of conviction" to determine whether the defendant was convicted of the elements of the generically defined crime. *See Espinoza-Morales*, 621 F.3d at 1144; *see also Young v. Holder*, 634 F.3d 1014, 1019 (9th Cir. 2011); *United States v. Moriel-Luna*, 585 F.3d 1191, 1200 n.7 (9th Cir. 2009); *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1082 (9th Cir. 2007); *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002), *abrogated on other grounds*, *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009).

[8] Neither the parties nor the court is permitted in a *Taylor* analysis of a past crime to develop new evidence outside the record of conviction to prove the underlying elements of the crime. Here, the public property records were clearly outside the record of conviction, and the district court erred by relying on them at sentencing.

4

On appeal, the government urges us to consider the transcript of the state court plea colloquy. However, it did not

present this document to the district court, and it is not part of the district court record. We decline to supplement the record on appeal. First, we rarely take judicial notice of facts presented for the first time on appeal. *United States v. Torres-Flores*, 502 F.3d 885, 894 (9th Cir. 2007) (citations omitted). Second, we take judicial notice of a fact only if it is "not subject to reasonable dispute." *Id.* (citing Fed. R. Evid. 201(b)). Here, the language of the colloquy is subject to varying interpretations, and there is a reasonable dispute as to what the plea colloquy establishes. Finally, and most importantly, it is not within our province to sentence the defendant based on considerations outside the sentencing decision. Appellate courts are not sentencing courts. These questions are best left to the sentencing court for consideration in the first instance. Thus, we decline the government's invitation to consider material outside the district court record and deny its motion to supplement the record.

5

Because none of the documents urged for our consideration establish that the defendant committed the generic crime of "burglary of a dwelling," we cannot affirm the district court on the basis of the modified categorical approach.

IV

**[9]** Because our decision in *Grisel* was a non-constitutional decision of substantive law, it applies retroactively. Under *Grisel*, the defendant's burglary conviction does not qualify categorically as a predicate offense. The documents in the record are not sufficient to sustain the sentence under a modified categorical analysis. We reverse the district court and remand for resentencing on an open record. *United States v. Matthews*, 278 F.3d 880, 885 (9th Cir. 2002) (en banc).

**VACATED and REMANDED.**